2015 COA 41

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

**v.**

**Robert ROLETTO, Defendant–Appellant.**

**Court of Appeals No. 13CA2315**

Colorado Court of Appeals, Div. II.

Announced April 9, 2015

Cynthia H. Coffman, Attorney General, Jillian J. Price, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Megan Marlatt, Deputy State Public Defender, Grand Junction, Colorado, for Defendant–Appellant.

Opinion by JUDGE CASEBOLT

¶ 1 Defendant, Robert Roletto, appeals the district court's order revoking his probation based on his failure to pay restitution. We affirm.

## I. Background

¶ 2 Defendant pleaded guilty to defrauding a secured creditor and second degree perjury. The court sentenced him to probation for five years. A condition of his probation required him to pay restitution on a monthly basis.

¶ 3 Roughly two and one-half years into defendant's sentence, the probation department filed a probation revocation complaint against him, asserting that he had failed to pay restitution.

¶ 4 At the hearing on the complaint, the parties did not dispute the amount of restitution defendant had paid. Defendant had made several restitution payments during the first eight months of his sentence, but had failed to make any payments during the two years preceding the hearing. The disputed issue was whether he was financially able to pay restitution.

¶ 5 Defendant testified that he had worked as a caregiver for his mother during the time he had made payments. His mother died, however, about seven months into his sentence, which terminated his source of income. Since his mother had died, he had lived in a trailer on a friend's property. Although he did not pay rent, he helped the friend with chores such as vacuuming, mowing the lawn, and feeding the dogs.

¶ 6 Defendant testified that his only income since his mother died had been food stamps and $160 that he had received for selling some property. He stated that he could not work for the following reasons:

- He suffered from chronic pancreatitis, and the narcotic pain medications he took for that condition impaired his equilibrium and balance. As a result, he could not safely continue his career driving trucks. Other businesses had "scratched" him because of his medications.

- He could not work consistently for long periods because his pain varied unpredictably. Sometimes it prevented him from doing anything but lying down. He testified that people would not pay him to do chores if he could not complete the jobs in a timely manner.

- His criminal record would deter people from hiring him.

According to his probation case manager, defendant had not provided any "documentation to support his claim that he could not work." When asked if he had looked for a job, defendant testified that he had "tried everywhere from Wal–Mart, City Market," and the "butchers' program at Safeway." He planned to start a lawn-mowing business the following spring. He had applied for Social Security disability benefits, but his application had been denied.

¶ 7 At the conclusion of the hearing, the court made the following findings:

- No doctor had said that defendant could not work.

- Defendant offered no "proof that he [had] applied anywhere to try and secure a job."

- Defendant expressed "a defeatist attitude, without actually going out and looking for work."

- Without "independent proof" that defendant could not work, it "[could not] find that he's unable to work."

- Defendant failed to prove "an inability to pay."

- Defendant had violated the probation condition that required him to pay restitution.

After making those findings, the court revoked defendant's probation and resentenced him to another probationary term.

¶ 8 Defendant now appeals, contending that the court (1) applied an incorrect legal standard in determining whether he was able to pay restitution; and (2) improperly relied on information it read in the newspaper to find that he was able to pay. We reject these contentions.

## II. Legal Standard

¶ 9 We review de novo whether the district court applied the correct legal standard. *See People v. Shifrin*, 2014 COA 14, ¶ 130, 342 P.3d 506.

¶ 10 In *People v. Romero*, 192 Colo. 106, 108, 559 P.2d 1101, 1102 (1976), the Colorado Supreme Court stated that, before revoking probation based on a failure to pay restitution, a court must make a finding that a probationer has the present ability to pay the ordered restitution, as measured at the time of the revocation hearing. It further held that the present ability to pay contemplates "that (1) a job for which the probationer is qualified is available; (2) the job would produce an income adequate to meet his obligations; and (3) the probationer unjustifiably refuses to take it." *Id.*

¶ 11 Here, the court did not make express findings on these three enumerated factors. As a result, defendant contends that the court applied the wrong legal standard when determining that he was able to pay restitution. We conclude that the court was not required to determine defendant's ability to pay based exclusively on the three factors that he highlights.

### A. Ability to Pay Restitution

¶ 12 Noting that due process and equal protection principles "converge" in cases involving indigent defendants in the criminal justice system, in *Bearden v. Georgia*, 461 U.S. 660, 665, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983), the United States Supreme Court discussed the constitutional concerns raised by revoking a defendant's probation based on his or her failure to pay restitution. The Court held "that in revoca-

tion proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay." *Id.* at 672, 103 S.Ct. 2064. Thus, a court may revoke probation and sentence the defendant to imprisonment if the defendant has "willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay." *Id.* But if the defendant "could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternate measures of punishment other than imprisonment." *Id.*

¶ 13 In *People v. Silcott*, 177 Colo. 451, 454, 494 P.2d 835, 837 (1972), the Colorado Supreme Court held that a trial court must find that the defendant had the ability to pay child support before revoking his or her probation for failing to pay. A few years later, the *Romero* court essentially adopted the *Silcott* requirements for use in general probation revocation proceedings. *Romero*, 192 Colo. at 108, 559 P.2d at 1102. The court again cited these three "factors" in *Strickland v. People*, 197 Colo. 488, 489, 594 P.2d 578, 579 (1979).

### B. Legislation

¶ 14 Following *Silcott, Romero*, and *Strickland*, the Colorado General Assembly amended the predecessor to what is now section 16–11–206(3), C.R.S. 2014, which governs probation revocation hearings. Ch. 187, sec. 5, § 16–11–206(3), 1983 Colo. Sess. Laws 664–65. Under this 1983 amendment, "the prosecution has the burden of establishing by a preponderance of the evidence the violation of a condition of probation" and when the prosecution asserts that a probationer has violated a condition of probation that requires him or her to pay restitution, "evidence of failure to pay shall constitute prima facie evidence of a violation." *Id.*

### C. Current Legal Standard

¶ 15 The supreme court has neither cited nor expressly abandoned the three *Romero* factors following the 1983 statutory amendment. It has, however, analyzed a similar 1983 amendment to Colorado's deferred sentencing statute. *See People v. Afentul*, 773 P.2d 1081 (Colo. 1989).

¶ 16 In *Afentul*, the court outlined the procedure for determining whether a defendant has violated a deferral condition that he or she must pay restitution. *Id.* at 1085. It stated that the prosecution bears the burden to prove that ·the defendant . did not pay restitution ás the court ordered, and evidence that · the defendant did not pay constitutes prima facie evidence that he or she has violated the condition. *Id.* If the prosecution presents this prima facie evidence, the burden shifts to the defendant to prove by a preponderance of the evidence that he or she was financially unable to pay. *Id.*

¶ 17 Section 16–11–206(3) prescribes the same procedure as that set forth in *Afentul*, in which the court interpreted language similar to the relevant portion of section 16–11–206(3). *Cf. People v. Cunefare*, 102 P.3d 302, 306 (Colo. 2004) ("Because the language of the intimidation statute is substantially similar to the language we interpret in this case, we hold that the same principles apply here."). Like section 16–11–206(3), the deferred· sentencing statute at issue in *Afentul* .provided that evidence of "failure to pay ... shall constitute prima facie evidence of a violation." 773 P.2d at 1084 (internal quotation marks omitted). The *Afentul* court relied on the deferred sentencing statute's "prima facie evidence" provision to articulate the burden-shifting procedure for determining a defendant's ability to pay. *Id.* at 1084–85.

¶ 18 Further, the .General Assembly added the "prima facie evidence" provisions to section 16–11–206(3) and the deferred sentencing statute in the same legislative bill. *See* Ch. 187, sec. 4, § 16–7–403(2), 1983 Colo. Sess. Laws 664; Ch. 187, sec. 5, § 16–11–206(3), 1983 Colo. Sess. Laws 664–65. This leads us . to conclude that the legislature intended the term "prima facie evidence" to carry the same meaning in both statutes. *Cf. Gen. Elec. Co. v. Niemet*, 866 P.2d 1361, 1366 (Colo. 1994) · ("When we interpret related statutes, it is important that we harmonize their meanings and interpret their words consistently.").

¶ 19 Therefore, when the prosecution asserts that a probationer has violated the condition that he or she must pay restitution, it initially bears the burden to prove that·the probationer has not paid ·restitution as the court ordered. § 16–11–206(3); *see Afentul*, 773 P.2d at 1085. Evidence that the probationer did not comply with the court's restitution order constitutes prima facie evidence that he or she has violated the condition requiring that he or she do. so. § 16–11–206(3); *see Afentul*, 773 P.2d at 1085. If the prosecution so proves, the burden shifts to the probationer to prove by a preponderance of the evidence that he or she was financially unable to make payments when they became due. *See* § 16–11–206(3); *Afentul*, 773 P.2d at 1085; *see also* § 16–18.5–105(3)(d)(I), C.R.S. 2014 (court may revoke probation for failure to pay restitution unless "the defendant establishes that he or she was unable to make the payments").

¶ 20 Whether the probationer has established that he or she is unable to pay restitution is a question of fact to be determined by the district court. *See People v. Ickler*, 877 P.2d 863, 866 (Colo. 1994). In making that determination, the court may consider, among other factors:

- Whether the probationer has made an effort to gain employment or borrow money so that he or she can pay restitution. *See Bearden*, 461 U.S. at 668, 103 S.Ct. 2064.
- Whether the probationer has access to a job that offers an income sufficient to meet his or her obligations. *See Romero*, 192 Colo. at 108, 559 P.2d at 1102.
- Whether the probationer has unjustifiably refused to accept a job. *See id.*
- Whether the probationer has unjustifiably quit his or her job. *See Bearden*, 461 U.S. at 668, 103 S.Ct. 2064.
- Whether the probationer has income, assets, and financial obligations sufficient to make payments. *See Afentul*, 773 P.2d at 1083–86.
- Whether· the probationer can provide necessary food and shelter to the probationer ·and his or her dependents. *See id.*
- Whether the probationer has complied with the probation department's requests for evidence demonstrating the probationer's income, assets, or expenses. *See*

*People v. Rivera–Bottzeck,* 119 P.3d 546, 549 (Colo. App. 2004).

- Whether a probationer's medical condition(s) impair or impede the ability to work. *See United States v. Wells,* 177 F.3d 603, 611 (7th Cir. 1999) (a defendant's alleged poor health may be considered when determining ability to pay).

¶ 21 We reject defendant's argument that a court may revoke probation for failure to pay restitution only if it finds that (1) a job for which the probationer is qualified is available; (2) the job would allow the probationer to meet his or her financial obligations; and (3) the probationer unjustifiably refuses to take the job. *See Romero,* 192 Colo. at 108, 559 P.2d at 1102. Although these factors may be relevant to the probationer's ability to pay in some cases, they will not decide that question in every case.

¶ 22 Furthermore, following *Romero,* the legislature amended section 16–11–206(3) to add the "prima facie evidence" provision. Ch. 187, sec. 5, § 16–11–206(3), 1983 Colo. Sess. Laws 664–65. And the supreme court has not cited the *Romero* factors since that amendment. Significantly, in *Afentul,* which was decided after the similar amendment to the deferred sentencing statute, the court did not instruct trial courts to use those factors to measure the defendant's ability to pay in deferred sentence revocation proceedings. *See* 773 P.2d at 1083–86. To reconcile these authorities, we conclude that, after the 1983 amendment, a court is not required to assess the defendant's ability to pay restitution based exclusively on the factors identified in *Romero.*

¶ 23 In addition, requiring courts to assess a defendant's ability to pay based only on *Romero's* factors would be inconsistent with section 16–11–206(3)'s burden-shifting procedure. Under section 16–11–206(3), once the prosecution shows that the defendant has not paid, the burden shifts to the defendant to show that he or she was unable to pay. It is unlikely that the defendant would offer evidence that he unjustifiably refused to accept a job in his or her effort to show an inability to pay. Indeed, such evidence would hinder, not help, that effort.

### D. Application

¶ 24 We conclude that the district court applied the correct legal standard here. Once the prosecution presented evidence that defendant had not complied with the court's restitution order, the court allowed defendant to present evidence concerning his ability to pay. Indeed, all parties agreed that defendant bore the burden to show that he was unable to pay restitution. At the end of the hearing, the court found that defendant had not shown that he was unable to pay his restitution obligation. This procedure was consistent with Colorado law, as we have outlined it above.

¶ 25 We disagree with defendant's assertion that the district court here "essentially made the same ruling" as the trial court had in *Romero,* which requires reversal. Unlike the court here, the trial court in *Romero* "failed to make a finding of [the] defendant's ability to make the payments as of the time of the revocation hearing." 192 Colo. at 108, 559 P.2d at 1102. Consequently, *Romero* does not suggest that the district court erred in this case.

### III. The Newspaper Comment

¶ 26 While making its findings and ruling, the court said, "In the newspaper, this morning, I read that there were jobs available." Defendant argues that this statement reveals that the court improperly relied on "hearsay evidence" to find that he had violated the restitution condition. Because he did not have an opportunity to review the newspaper, he argues, the court denied him due process by relying on it to support its finding. We are not persuaded.

### A. Preservation and Standard of Review

¶ 27 Defendant did not object to the statement that he now challenges, nor did he assert a due process argument in the district court. His arguments are therefore unpreserved. *People v. Ujaama,* 2012 COA 36, ¶ 37, 302 P.3d 296.

¶ 28 Colorado case law does not clearly dictate whether we should address defendant's unpreserved due process argument. *See People v. Allman,* 2012 COA 212, ¶ 14,

321 P.3d 557. On the one hand, *People v. Cagle*, 751 P.2d 614, 619 (Colo. 1988), and its progeny state that it "is axiomatic that this court will not consider constitutional issues raised for the first time on appeal." *See People v. Devorss*, 277 P.3d 829, 834 (Colo. App. 2011) (collecting cases). On the other hand, despite that assertion, the supreme court and divisions of this court have chosen to address unpreserved constitutional arguments. *See id.* (collecting cases).

¶ 29 Here, because the record affords us the ability to review defendant's claim, we conclude that it is appropriate to do so, but under a plain error standard. *See Allman*, ¶ 15 & n.4; *People v. Lientz*, 2012 COA 118, ¶ 10 & n.1, 317 P.3d 1215. Plain error occurs when an error (1) is obvious, (2) prejudices a substantial right, and (3) casts serious doubt on the judgment's reliability. *People v. Friend*, 2014 COA 123M, ¶ 49, —— P.3d ——.

### B. Relevant Legal Principles

¶ 30 Probation revocation proceedings are different from criminal prosecutions. *People v. Ruch*, 2013 COA 96, ¶ 33, —— P.3d —— (*cert. granted* June 30, 2014). As a result, during such proceedings, the defendant is not entitled to the full panoply of rights associated with criminal prosecutions. *Id.*

¶ 31 Even so, due process requires the court to afford the probationer an opportunity to confront and cross-examine adverse witnesses, *Byrd v. People*, 58 P.3d 50, 56 (Colo. 2002), and section 16–11–206(3) requires the court to afford the defendant "a fair opportunity to rebut hearsay evidence."

### C. Analysis

¶ 32 Initially, we reject defendant's contention that the court took "judicial notice" of the newspaper, which was "the main hearsay evidence" employed against him. The record reveals that the comment was an isolated reference within the court's findings, which fill nearly six pages of transcript. Viewed in that context, the record does not suggest that the court used the information as evidence against defendant. Rather, in our view, the statement was merely a casual observation.

¶ 33 Moreover, the parties' dispute did not center on whether jobs were generally available. Instead, defendant asserted that his medical condition rendered him unable to work. And the court's finding that defendant had not shown that he was unable to work is unrelated to its comment about the newspaper.

¶ 34 *People v. Loveall*, 231 P.3d 408 (Colo. 2010), on which defendant relies, does not persuade us that the court violated his due process rights. In *Loveall*, unlike in this case, the prosecution employed hearsay evidence to establish that a violation had occurred. *Id.* at 411. Here, in contrast, defendant conceded that he had not made the necessary payments; hence, the court's belief that jobs were generally available was peripheral to the contested issue, and the newspaper was not used to prove that defendant had violated his probation.

¶ 35 To the extent defendant argues that the record does not support the court's finding that he was able to pay, we disagree. We will reverse the district court's factual findings only for clear error. *See Valdez v. People*, 966 P.2d 587, 590 (Colo. 1998).

¶ 36 The court based its ultimate finding on its determination that defendant did not prove he was unable to work. In support of that determination, the court cited the lack of "independent proof," such as a doctor's recommendation that defendant not work or materials demonstrating that he had applied for a job but had not been hired. The record supports those findings.

### IV. Conclusion

¶ 37 The order is affirmed.

JUDGE DUNN concurs.

JUDGE GRAHAM specially concurs.

Graham, J., specially concurring.

¶ 38 Although I agree with the result reached by my colleagues in affirming the order of the district court, I do not agree that we should reach the unpreserved due process argument. I stand by the long fol-

lowed principle that we will not reach unpreserved constitutional .issues raised for the first time on appeal. *See Martinez v. People*, 244 P.3d 135, 139 (Colo. 2010) ("As a threshold matter, however, appellate courts should not reach Colorado Constitutional arguments raised for the first time ·on appeal." (citing with approval *People v. Cagle;* 751 P.2d 614, 619 (Colo. 1988) ("It is axiomatic that this court will not consider constitutional issues raised for the first time on appeal.")))