Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
December 9, 2019

**2019 CO 101**

**No. 16SC979, *Williams v. People*—Deferred Judgment—Restitution—Ability to Pay—Statutory Interpretation.**

The supreme court considers whether, in a deferred judgment revocation proceeding based on a defendant's failure to pay restitution, the prosecution bears the burden of proving that the defendant has the ability to pay restitution.

The supreme court holds that, when a defendant introduces some evidence of inability to pay restitution, a district court must make the ability-to-pay findings under section 18-1.3-702(3)(c), C.R.S. (2019), before revoking a deferred judgment and sentence for failure to pay restitution.

The supreme court further holds that the prosecution bears the burden of proving by a preponderance of the evidence that (1) "the defendant has the ability to comply with the court's order to pay a monetary amount due without undue hardship to the defendant or the defendant's dependents," and (2) "the defendant has not made a good-faith effort to comply with the order."  § 18-1.3-702(3)(c).

## The Supreme Court of the State of Colorado
2 East 14th Avenue • Denver, Colorado 80203

### 2019 CO 101

### Supreme Court Case No. 16SC979
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 14CA1959

### Petitioner:

Ruth Cheryl Williams,

v.

### Respondent:

The People of the State of Colorado.

### Judgment Reversed
*en banc*
December 9, 2019

**Attorneys for Petitioner:**
Megan A. Ring, Public Defender
Kamela Maktabi, Deputy Public Defender
*Denver, Colorado*

**Attorneys for Respondent:**
Philip J. Weiser, Attorney General
Megan C. Rasband, Assistant Attorney General
*Denver, Colorado*

**JUSTICE HOOD** delivered the Opinion of the Court.

¶1     Ruth Cheryl Williams allegedly stole $10,000 from her employer. She pled guilty to felony theft in exchange for a four-year deferred judgment and sentence. The district court placed her on probation for the deferral period and required that she pay $10,000 in restitution. Roughly three years into her deferred sentence, Williams had only paid about $500.

¶2     Based on that failure to pay, the district attorney moved to impose judgment and sentence. The district court concluded that Williams had violated the restitution order, so it revoked the deferred judgment and entered a conviction for felony theft.

¶3     Williams appealed, contending that the prosecution failed to meet its burden to prove that she had the financial ability to pay restitution. Applying this court's precedent, a division of the court of appeals concluded that the prosecution had no such burden. Instead, if Williams wanted to avoid becoming a convicted felon, *she* had to prove that she couldn't pay.

¶4     We reverse and hold that when a defendant introduces some evidence of her inability to pay restitution, a district court must make the ability-to-pay findings under section 18-1.3-702(3)(c), C.R.S. (2019), before revoking a deferred judgment for failure to pay. We further hold that the prosecution bears the burden of proving by a preponderance of the evidence that (1) "the defendant has the ability to comply with the court's order to pay a monetary amount due without

2

undue hardship to the defendant or the defendant's dependents," and (2) "the defendant has not made a good-faith effort to comply with the order." § 18-1.3-702(3)(c).

¶5 Because Williams introduced some evidence of her inability to pay restitution, we remand for a new deferred judgment revocation hearing under this framework.

## I. Facts and Procedural History

¶6 After Williams allegedly stole $10,000 from her employer, the state charged her with felony theft under section 18-4-401, C.R.S. (2019), and later added misdemeanor criminal possession of a financial device under section 18-5-903, C.R.S. (2019). As part of a plea agreement, she pled guilty to both charges. As to the felony theft count, the court placed her on a four-year deferred judgment and sentence to be supervised by the probation department. As to the misdemeanor count, the court imposed judgment and sentenced her to two years of probation, to be served concurrently with the deferred judgment. The agreement required Williams to pay $10,000 in restitution to her employer, and the probation department established a monthly payment schedule.

¶7 Two years later, the probation department filed a complaint alleging that Williams had not made a single restitution payment. It recommended that the district court enter judgment on the theft count. Williams denied these allegations.

3

Following a hearing, the court held the complaint in abeyance and granted Williams additional time to comply.

¶8 Williams subsequently missed several restitution payments. Because she had paid no more than $534 total toward restitution, the probation department again recommended that the court revoke the deferred judgment. It also alleged that Williams missed several scheduled appointments with her probation officer, did not search for employment in compliance with the department's instructions, and had not completed a community service requirement. The district attorney filed a motion to the same effect.

¶9 At the revocation hearing, Williams's probation officer testified that Williams had indeed missed multiple payments but acknowledged that Williams: (1) was searching for a job; (2) had an overdue home energy bill of about $3,000 and also owed about $8,000 to a credit union; and (3) had purportedly been trying to sell her personal belongings to pay restitution.

¶10 Defense counsel argued that "there [had] not been any showing by the District Attorney that Ms. Williams did, in fact, have the ability to pay."

¶11 Citing this court's decision in *People v. Afentul*, 773 P.2d 1081, 1085 (Colo. 1989) (holding that after the prosecution presents evidence of a defendant's failure to pay restitution, the burden then shifts to the defendant to prove that she was financially unable to pay restitution), the district court disagreed that the

4

prosecution had the burden to prove ability to pay. Because Williams "never took any action to indicate that . . . she was unable to pay," was not disabled, and had a car, the court found by a preponderance of the evidence that Williams had the ability to pay. The court concluded that Williams had failed to comply with the restitution order, revoked the deferred judgment and sentence, and entered a judgment of conviction for felony theft.[1]

¶12 After a hearing, the court sentenced Williams to four years of probation. It also imposed, but suspended, a ninety-day jail sentence on the condition that Williams participate in a workforce program and receive a mental health evaluation within the next six months. The court had previously informed Williams that unless she found work, she would be "sentenced to Community Corrections or prison [i]n this case."

¶13 Williams appealed, challenging the theft conviction. She contended that the prosecution had the burden to prove she had the financial ability to pay restitution and that insufficient evidence supported the district court's finding that she had the ability to pay.

---

[1] The court also revoked the deferred judgment based on its finding that Williams did not complete any community service hours, but the court of appeals concluded that the record did not support that finding. *People v. Williams*, No. 14CA1959, ¶ 17 (Nov. 10, 2016).

5

¶14 A division of the court of appeals disagreed with Williams. Relying on our decision in *Afentul*, the division unanimously held that the record supported the district court's finding that Williams had the ability to pay. *People v. Williams*, No. 14CA1959, ¶ 11 (Nov. 10, 2016). It reasoned that "Williams simply failed to present evidence providing a complete picture of her financial circumstances," and the district court judge "could have only guessed" whether Williams had any other sources of income, assets, or financial obligations. *Id.* at ¶ 13.

¶15 The division also rejected Williams's argument that the prosecution had the burden to prove she had the ability to pay. *Id.* at ¶ 14. Again relying on *Afentul*, the division reasoned that the burden shifted to Williams to prove she was unable to make the restitution payments. *Id.*

¶16 Williams then petitioned this court for certiorari. We agreed to review her case.[2]

---

[2] We granted certiorari to review the following issues:

1. Whether the State is required to prove, before the revocation of a criminal defendant's deferred judgment for failure to pay restitution, that the defendant was financially able to pay restitution and willfully or unreasonably failed to pay restitution as this Court's opinions in *Silcott*, *Romero*, and *Strickland* require.

2. Whether the evidence was sufficient to sustain the district court's finding that Ms. Williams violated the terms and conditions of her deferred judgment.

6

## II. Analysis

¶17 After identifying the standard of review, we discuss the statutes governing deferred judgment revocation proceedings, § 18-1.3-102, C.R.S. (2019), probation revocation hearings, § 16-11-206, C.R.S. (2019), and due process protections for defendants ordered to pay restitution, § 18-1.3-702. We then address whether the prosecution must prove that a defendant is financially able to pay restitution before a court may revoke a deferred judgment for failure to pay restitution. In answering this question, we look to sections 18-1.3-102(2), 16-11-206(3), and 18-1.3-702(3)(c). Harmonizing these provisions, we conclude that when a defendant introduces some evidence of her inability to pay restitution, a district court must make the ability-to-pay findings under section 18-1.3-702(3)(c) before revoking a deferred judgment for failure to pay. We further conclude that the prosecution bears the burden of proving by a preponderance of the evidence that the defendant was financially able to pay restitution under the enumerated statutory criteria.

### A. Standard of Review

¶18 Whether the prosecution bears the burden of proving a defendant's ability to pay in a deferred judgment revocation proceeding based on the defendant's failure to pay restitution is a question of law that we review de novo. *See People v. Delage*, 2018 CO 45, ¶ 5, 418 P.3d 1178, 1179.

¶19 To resolve this issue, we must interpret the foregoing statutes. In interpreting statutes, we "endeavor to effectuate the purpose of the legislative scheme." *People v. Iannicelli*, 2019 CO 80, ¶ 20, 449 P.3d 387, 391. To do so, we look to the statute's plain language, "giving its words and phrases their plain and ordinary meanings." *Id.* at ¶ 19, 449 P.3d at 391. "We also read the statutory scheme as a whole, giving consistent, harmonious, and sensible effect to all of its parts and avoiding constructions that would render any words or phrases superfluous." *Pineda-Liberato v. People*, 2017 CO 95, ¶ 22, 403 P.3d 160, 164.

## B. Deferred Judgments

¶20 A deferred judgment and sentence is an alternative to a traditional guilty plea. *People v. Widhalm*, 642 P.2d 498, 500 (Colo. 1982). It allows a defendant to plead guilty but defers entry of the judgment and sentence for a specified period of time. *Id.*; *M.T. v. People*, 2012 CO 11, ¶ 11, 269 P.3d 1219, 1221. Before the defendant enters a guilty plea, the district attorney may enter into a written stipulation (to be signed by the defendant, the defendant's attorney, and the district attorney), requiring the defendant to comply with certain conditions during the deferral period. § 18-1.3-102(2). The deferred judgment statute provides that these conditions "shall be similar in all respects to conditions permitted as part of probation." *Id.* And during the deferral period, the court may place the defendant under the supervision of the probation department. *See id.*

8

¶21     If the defendant complies with these conditions, then at the end of the deferral period, the court must withdraw the defendant's guilty plea and dismiss with prejudice the charges underlying the deferred judgment. *Id.*

¶22     But, if the defendant violates "any condition regulating the conduct of the defendant," the court "shall enter judgment and impose sentence upon the guilty plea." *Id.*; *People v. Wilder*, 687 P.2d 451, 453 (Colo. 1984) ("[A] trial court does not have discretion in revoking a deferred judgment once it finds that the defendant has violated the terms of a deferred judgment and sentence.").[3]

¶23     In the event of an alleged violation, the district attorney or a probation officer must apply for entry of the judgment of conviction and sentence, and the court must hold a hearing regarding the application. § 18-1.3-102(2). At this hearing, "[t]he burden of proof . . . shall be by a preponderance of the evidence." *Id.* When one of the stipulated conditions is a restitution payment, "evidence of failure to pay the restitution shall constitute prima facie evidence of a violation." *Id.*

¶24     Of significance here, "the procedural safeguards required in a revocation of probation hearing shall apply." *Id.*

---

[3] The deferred judgment statute provides an exception to this rule, but it is inapplicable here. *See* § 18-1.3-102(2).

### C. Revocation of Probation Hearings and Statutory Due Process Protections Regarding Failure to Pay

¶25 In a revocation of probation hearing, "the prosecution has the burden of establishing by a preponderance of the evidence the violation of a condition of probation." § 16-11-206(3). And, like deferred judgment revocation proceedings, when "the alleged violation of a condition is the probationer's failure to pay . . . restitution . . . , evidence of the failure to pay shall constitute prima facie evidence of a violation." *Id.* "If probation is revoked, the court may then impose any sentence or grant any probation . . . which might originally have been imposed or granted." § 16-11-206(5).

¶26 But before a court may revoke probation for failure to pay, section 18-1.3-702(3) provides additional procedural protections. Under section 18-1.3-702(3), "[i]ncarceration for failure to pay is prohibited absent provision of the following procedural protections." A court "shall not find the defendant in contempt of court, nor impose a suspended sentence, nor *revoke probation*, nor order the defendant to jail for failure to pay unless" it has made "findings on the record, after providing notice to the defendant and a hearing," that (1) "the defendant has the ability to comply with the court's order to pay a monetary amount due without undue hardship to the defendant or the defendant's dependents," and (2) "the defendant has not made a good-faith effort to comply with the order." § 18-1.3-702(3)(c) (emphasis added); *see also* Crim. P. 32(g) ("When

a defendant fails to pay a monetary amount imposed by the court, the court shall follow the procedures set forth in section 18-1.3-702(3).").[4]

¶27 This statutory procedure helps to ensure that probationers receive the due process protections to which they are entitled under the Fourteenth Amendment to the U.S. Constitution. The U.S. Supreme Court declared in *Bearden v. Georgia*, 461 U.S. 660, 672–73 (1983), that depriving a probationer of her conditional freedom "simply because, through no fault of [her] own," she cannot pay restitution is "contrary to the fundamental fairness required by the Fourteenth Amendment." For this reason, the Court held that "in revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay." *Id.* at 672. Thus, "[i]f the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to

---

[4] Section 18-1.3-702(4) further describes when a defendant or her dependents are "considered to suffer undue hardship" and enumerates factors the court "shall consider" in "determining whether a defendant is able to comply with an order to pay a monetary amount without undue hardship." But because the General Assembly added section 18-1.3-702(4) in 2016, and the court held Williams's revocation hearing on July 25, 2014, the court was not required to consider these factors when finding that Williams had the ability to pay. *See* Ch. 343, sec. 2, § 18-1.3-702, 2016 Colo. Sess. Laws 1394, 1397 (noting this act applies to hearings for failure to make monetary payments conducted on or after June 10, 2016).

pay, the court may revoke probation and sentence the defendant to imprisonment." *Id.*

¶28 Recently, this court adopted *Bearden*'s holding for probation revocation proceedings based on a defendant's financial inability to comply with a *nonpayment* condition of probation. *Sharrow v. People*, 2019 CO 25, ¶ 26, 438 P.3d 730, 737. In *Sharrow*, the defendant claimed that he left his residence and failed to complete treatment—in violation of probation—because he was unable to pay for rent and treatment. *Id.* at ¶ 11, 438 P.3d at 733–34. Applying *Bearden*, we held that "the trial court cannot revoke probation and impose imprisonment without first determining whether [the probationer] failed to comply with probation willfully or failed to make sufficient bona fide efforts to acquire resources to comply with probation." *Id.* at ¶ 6, 438 P.3d at 733. But we declined to adopt *Bearden* in the payment condition context because we recognized that Colorado law already addresses this issue in Crim. P. 32 and section 18-1.3-702. *Id.* at ¶ 6 n.1, 438 P.3d at 732 n.1.

¶29 Indeed, section 18-1.3-702 affords probationers greater procedural protection than *Bearden*: Under *Bearden*, a court may still revoke probation and imprison a probationer who cannot pay despite a good-faith effort to do so if "alternate measures [of punishment] are not adequate to meet the State's interests." 461 U.S. at 672. In contrast, section 18-1.3-702(3)(c) prohibits a court

12

from revoking probation and incarcerating a probationer for failure to pay, unless it finds on the record that the probationer had the ability to pay without undue hardship and did not make a good-faith effort to pay.

¶30 We now consider whether these statutory procedural safeguards apply in deferred judgment revocation proceedings for failure to pay restitution.

### D. Statutory Due Process Protections for Probation Revocation, Based on Failure to Pay, Extend to Deferred Judgment Revocations at the Time of Revocation

¶31 Because "the procedural safeguards required in a revocation of probation hearing shall apply" in a deferred judgment revocation hearing, § 18-1.3-102(2), we look to the procedural safeguards required before a court may revoke probation for failure to pay restitution.

¶32 Like the deferred judgment statute, the probation revocation hearing statute provides that "[w]hen, in a revocation hearing, the alleged violation of a condition is the probationer's failure to pay . . . restitution . . . , evidence of the failure to pay shall constitute prima facie evidence of a violation." *Compare* § 16-11-206(3), *with* § 18-1.3-102(2) ("evidence of failure to pay the restitution shall constitute prima facie evidence of a violation").

¶33 But before a court may revoke probation for failure to pay, section 18-1.3-702(3)(c) requires the court to make additional findings. Recall that under this provision, the court "shall not . . . revoke probation . . . for failure to pay unless

13

the court has made findings on the record, after providing notice to the defendant and a hearing," that (1) "the defendant has the ability to comply with the court's order to pay a monetary amount due without undue hardship to the defendant or the defendant's dependents," and (2) "the defendant has not made a good-faith effort to comply with the order." § 18-1.3-702(3)(c).

¶34 While section 18-1.3-702(3) requires these ability-to-pay findings before a court may incarcerate a probationer for failure to pay, we conclude this procedural protection comes into play before a court may *revoke probation* for failure to pay.

¶35 We come to this conclusion for several reasons. First, the plain language of subsection 18-1.3-702(3)(c) requires these findings before a court may "revoke probation" for failure to pay. And, of course, a court must first revoke probation before incarcerating a probationer: "*If* probation is revoked, the court may *then* impose any sentence or grant any probation . . . which might originally have been imposed or granted." § 16-11-206(5) (emphases added); *see People ex rel. Gallagher v. Dist. Court*, 591 P.2d 1015, 1017 (Colo. 1978) ("In a probation revocation hearing, the concern is whether the alternatives to incarceration which have been made available to a defendant remain viable."). To interpret section 18-1.3-702(3)(c) as requiring ability-to-pay findings only immediately before incarcerating a probationer for failure to pay would render the language prohibiting a court from revoking probation absent these findings meaningless.

14

This we may not do. *See Pineda-Liberato*, ¶ 39, 403 P.3d at 166 ("We cannot, however, interpret statutory provisions so as to render any of their words or phrases meaningless or superfluous.").

¶36 Second, section 18-1.3-702(3)(c) enumerates four specific scenarios before which a court must make these ability-to-pay findings on the record: (1) finding a defendant in contempt of court; (2) imposing a suspended sentence; (3) revoking probation; and (4) ordering a defendant to jail. And, the first three scenarios echo the preceding subsection, § 18-1.3-702(3)(b):

> [I]f the defendant failed to pay a monetary amount due and the record indicates that the defendant has willfully failed to pay that monetary amount, the court, when appropriate, may consider a motion to impose part or all of a suspended sentence, may consider a motion to revoke probation, or may institute proceedings for contempt of court.

Together with subsection 18-1.3-702(3)(c), this provision evinces the legislature's intent that a court make the ability-to-pay findings before granting these motions or finding a defendant in contempt of court.[5] *See Allen v. Charnes*, 674 P.2d 378,

---

[5] To the extent these provisions are ambiguous, we may consider the statute's legislative history. *Iannicelli*, ¶ 21, 449 P.3d at 391–92. The bill summary from the Senate Judiciary Committee similarly states that "if the defendant fails to pay, the court may consider a motion to impose part or all of a suspended sentence, revoke probation, or institute proceedings for contempt of court. The court *may not take any of these actions* unless it has made findings on the record, after providing notice to the defendant and a hearing, that the defendant has not made a good faith effort

381 (Colo. 1984) (A subsection must be read and considered in the context of the broader statutory section as a whole.); *Kirkmeyer v. Dep't of Local Affairs*, 313 P.3d 562, 568 (Colo. App. 2011) (A court may look to "the placement and interaction of subsections within the statutory framework.").

¶37 Third, section 18-1.3-702(3) ("Incarceration for failure to pay is prohibited . . . .") is readily harmonized with subsection 18-1.3-702(3)(c) ("The court shall not . . . revoke probation . . . for failure to pay . . . ."). *People v. Cross*, 127 P.3d 71, 73 (Colo. 2006) (When interpreting statutes, we must "harmonize potentially conflicting provisions."); *People v. Dist. Court*, 713 P.2d 918, 921 (Colo. 1986) ("If separate clauses within a statute may be reconciled by one construction but would conflict under a different interpretation, the construction which results in harmony rather than inconsistency should be adopted."). Read together, these provisions prevent a court from incarcerating a probationer for failure to pay unless the court makes the ability-to-pay findings before revoking probation for failure to pay.

¶38 Accordingly, a court must make the ability-to-pay findings under section 18-1.3-702(3)(c) before revoking probation for failure to pay, not before subsequently incarcerating a probationer for failure to pay.

---

to comply with the order." Final Bill Summary for H.B. 14-1061, S. Judiciary Comm., 69th Gen. Assemb., 2nd Sess. (Apr. 16, 2014) (emphasis added).

¶39 Because these ability-to-pay findings are procedural protections for probationers facing revocation of probation for failure to pay, *see* § 18-1.3-702(3), and "the procedural safeguards required in a revocation of probation hearing shall apply" in a deferred judgment revocation hearing, § 18-1.3-102(2), these findings apply in deferred judgment revocation proceedings for failure to pay restitution. *Accord Strickland v. People*, 594 P.2d 578, 579 (Colo. 1979) (holding—in the deferred judgment context—that before a court may revoke probation for failure to pay restitution, it must find the defendant had the ability to pay).

### E. The Prosecution Has the Burden to Prove a Defendant's Ability to Pay Restitution When the Defendant Presents Some Evidence of Inability to Pay

¶40 Harmonizing the ability-to-pay findings required by section 18-1.3-702(3)(c) with the plain language of the deferred judgment statute, we conclude that when a defendant introduces some evidence of her inability to pay, the prosecution has the burden of proving the defendant's ability to pay before a court may revoke a deferred judgment for failure to pay restitution.

¶41 Although the deferred judgment statute does not specify which party bears the burden of proof, it notes that "the procedural safeguards required in a revocation of probation hearing shall apply." § 18-1.3-102(2). And, the revocation of probation hearing statute specifies that "the prosecution has the burden of establishing by a preponderance of the evidence the violation of a condition of

17

probation." § 16-11-206(3). Thus, the prosecution bears the burden of proof in a deferred judgment revocation hearing.

¶42 As the moving party, the prosecution bears the initial burden of producing evidence that the defendant failed to pay the restitution payment ordered by the court. *Afentul*, 773 P.2d at 1085. The plain language of the deferred judgment statute instructs that this evidence constitutes "prima facie evidence" of a violation of the deferred judgment. § 18-1.3-102(2). And upon a violation "the court shall enter judgment and impose sentence." *Id.*; *Wilder*, 687 P.2d at 453 (Once a court "finds that the defendant has violated the terms of a deferred judgment and sentence," it "does not have discretion in revoking a deferred judgment."). This court has interpreted the phrase "prima facie evidence" in the deferred judgment statute as "evidence which, if not rebutted or contradicted, will sustain the entry of a judgment of conviction and the imposition of sentence." *Afentul*, 773 P.2d at 1084. Thus, under the deferred judgment statute, unrebutted evidence of failure to pay restitution is sufficient to enter the judgment.

¶43 But if the defendant rebuts the prosecution's prima facie evidence of failure to pay restitution by introducing some evidence of her inability to pay, thus placing her ability to pay at issue, the court may not revoke the deferred judgment for failure to pay unless it makes the following findings on the record: (1) "the defendant has the ability to comply with the court's order to pay a monetary

amount due without undue hardship to the defendant or the defendant's dependents," and (2) "the defendant has not made a good-faith effort to comply with the order." § 18-1.3-702(3)(c); *see* § 18-1.3-102(2).

¶44 Because a court may not revoke the deferred judgment for failure to pay unless it makes these affirmative ability-to-pay findings on the record, and the prosecution bears the burden of proof in a deferred judgment revocation hearing, it follows that the prosecution also bears the burden as to these findings.[6] *Cf.*

---

[6] We recognize the concern that placing the burden to prove ability to pay on the prosecution might require the prosecution to investigate the defendant's financial situation, which could demand significant time and resources. But, as we recognized in *Sharrow*, a "probation officer should be very familiar with the probationer's financial situation." ¶ 48, 438 P.3d at 741. Accordingly, "[w]e expect that a probation officer will be able to testify about the defendant's needs, financial means, and requests for financial assistance . . . and any efforts the defendant may have made toward obtaining employment." *Id.*, 438 P.3d at 741–42. Indeed, Williams's probation officer testified that she and a collections investigator determined Williams's ability to pay "based on the information that the defendant provide[d]." She also testified that Williams had to attend "regular reviews . . . to evaluate her ability to pay restitution," and that her ability to pay was "re-evaluated on a regular basis." And, to the extent that information provided by the defendant is incomplete or unreliable, the prosecution may call the defendant as a witness to testify regarding her ability to pay. *See Byrd v. People*, 58 P.3d 50, 56–57 (Colo. 2002) ("While a probationer retains her Fifth Amendment privilege to refuse to answer incriminatory questions, the prosecution may call her as a witness at a revocation hearing."). Indeed, it is generally incumbent on the defendant to raise and explain her inability to pay. § 18-1.3-702(2)(a) ("If at any time the defendant is unable to pay the monetary amount due, the defendant must contact the court's designated official or appear before the court to explain why he or she is unable to

*Sharrow*, ¶¶ 44–49, 438 P.3d at 741–42 (noting that when a defendant asserts a financial inability to comply with a nonpayment condition of probation, the burden of proof remains on the prosecution); CRE 301 (In civil cases, while the burden of production may shift, "the burden of proof . . . remains throughout the trial upon the party on whom it was originally cast."). As the moving party, the prosecution bears the risk of nonpersuasion — in the sense that the court will deny its application to revoke the deferred judgment — if it does not produce sufficient evidence to support the required ability-to-pay findings by a preponderance of the evidence.[7]

---

pay the monetary amount."). Thus, requiring the prosecution to produce evidence of and prove a defendant's ability to pay is not unreasonably burdensome.

[7] Guided by this court's rationale in *Strickland*, Williams contends that the prosecution must also prove that the defendant "unreasonably or willfully failed to pay" before a court may revoke a deferred judgment. But, in proving that a defendant has the ability to pay and failed to make a good-faith effort to pay, the prosecution necessarily establishes that any failure to pay was willful or at least unreasonable. *See Strickland*, 594 P.2d at 579 ("The reason for requiring that ability to pay be established . . . is to allow revocation only where the probationer *unreasonably* or *willfully* fails to comply . . . ."). Because in this context, these considerations are two sides of the same coin, it is unnecessary for the prosecution to additionally prove that the failure to pay was unreasonable or willful.

## F. The General Assembly Abrogated *Afentul*'s Burden-Shifting Procedure

¶45 These mandatory ability-to-pay findings render *Afentul*'s burden-shifting procedure a relic from a bygone statutory era. In *Afentul*, we concluded that once the prosecution presented evidence of the defendant's failure to pay restitution, "the burden then shift[ed] to the defendant to establish by a preponderance of the evidence that he was financially unable to make the payments at the time they should have been made." 773 P.2d at 1085.

¶46 But, following our decision in *Afentul*, the General Assembly amended the monetary payment statute to include section 18-1.3-702(3)(c), which requires a court to make additional ability-to-pay findings before revoking probation for failure to pay restitution. Ch. 164, sec. 1, § 18-1.3-702, 2014 Colo. Sess. Laws 575, 576–77.[8] Because we conclude that — when a defendant introduces some evidence of her inability to pay — a court must also make these ability-to-pay findings before revoking a deferred judgment for failure to pay, and the prosecution bears the burden of proof regarding these findings, *Afentul*'s burden-shifting procedure does not comport with the current statutory scheme and the procedural safeguards it requires before revoking a deferred judgment for failure to pay

---

[8] The statute's effective date was May 9, 2014, 2014 Colo. Sess. Laws at 578, and the court held Williams's revocation hearing on July 25, 2014.

restitution.  Thus, the legislature has abrogated the burden-shifting described in *Afentul*.

## III.  Sufficiency of the Evidence

¶47    Williams also contends that the evidence presented at the deferred judgment revocation hearing was insufficient to support the court's finding that she had the present ability to pay.  She therefore asks us to vacate the theft conviction and remand this case for dismissal.  But we conclude that a new deferred judgment revocation hearing is warranted.

¶48    On cross-examination, Williams's counsel elicited testimony from Williams's probation officer that Williams had an overdue home energy bill of about $3,000 and owed about $8,000 to a credit union and that Williams had told the probation officer that she had been trying to sell her belongings to pay restitution.  Because this was some evidence of Williams's inability to pay, the court had to make the ability-to-pay findings in section 18-1.3-702(3)(c) before revoking the deferred judgment for failure to pay restitution.  And, the prosecution had the burden of proving the facts underlying these findings by a preponderance of the evidence.  Thus, we remand for a new deferred judgment revocation hearing under this framework.

¶49    If the district court finds on the record that Williams had the ability to comply with the court's restitution order without undue hardship and that she did

22

not make a good-faith effort to comply, the court will re-enter the judgment of conviction for theft.  Conversely, if the prosecution does not meet its burden as to either of these findings, the judgment of conviction for felony theft is vacated.

## IV.  Conclusion

¶50    We reverse the judgment of the court of appeals and remand with instructions to return this case to the district court for a new deferred judgment revocation hearing consistent with this opinion.