23CA2083 Peo v Cavin 04-09-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA2083
Arapahoe County District Court No. 18CR2114
Honorable Shay K. Whitaker, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Brittnee Shaelynn Cavin,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE FREYRE
Brown and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 9, 2026

---

Philip J. Weiser, Attorney General, Wendy J. Ritz, First Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Daniel J. Sequeira, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Brittnee Shaelynn Cavin, appeals the trial court's order revoking her deferred judgment and sentence.  We affirm.

## I.    Background

¶ 2    On April 1, 2019, Cavin pleaded guilty to one count of possession of a controlled substance.  The trial court accepted the plea and entered a two-year deferred judgment and sentence.  The deferred judgment included the standard terms and conditions of probation.

¶ 3    As relevant here, the terms of Cavin's deferred judgment included the following:

> 9. I will report to the probation officer for appointments as directed by the Court or the probation officer.  I understand that the probation officer can visit me at reasonable times at home or elsewhere.  I will provide the probation department with safe access to my residence.

> 10. I will notify the probation officer of changes in my address, phone number, employment, or education status.

¶ 4    The agreement further stated that if Cavin "breache[d] any of the conditions regulating the conduct of the Defendant, the Court shall enter judgment and impose sentence upon such guilty plea."

1

¶ 5 On September 13, 2019, Cavin's probation officer filed a complaint for revocation of the deferred judgment and sentence. The complaint alleged that Cavin failed to appear for scheduled probation appointments on July 11, July 31, August 26, and September 10 and failed to pay imposed fees. Cavin did not respond to probation's attempts to contact her. The court issued a warrant for her arrest.

¶ 6 On August 31, 2020, Cavin appeared on the warrant and asked to apply for public defender representation. The court cancelled the arrest warrant and released Cavin on a personal recognizance bond. When Cavin failed to appear for a hearing on March 1, 2021, the court revoked her personal recognizance bond and issued another warrant for her arrest.

¶ 7 On March 11, Cavin again appeared on the warrant and explained that she missed the March 1 hearing because she was also dealing with a child protection case and got her dates confused. Cavin said she had repeatedly reached out to the public defender's office and had not heard back. The prosecution noted five prior failures to appear. The court said:

All right. Ms. Cavin, I can't stress to you enough that you can't continue to fail to appear on these cases. We keep doing this every month with you where we set a Court date, you fail to appear. Then you show up a couple of days later. We reinstate the bond and we keep going through the circle. We can't do this anymore.

What I will do today is I will give you a quick Arguello advisement. That's an advisement that basically goes over your rights to counsel and we are going to set this over for one final appearance of counsel to give you an opportunity to get things squared away with the [public defender]'s [o]ffice. But at this point we are moving forward with your case if you don't have an attorney.

¶ 8    Cavin said that she understood. The court then quashed the warrant and reinstated her bond.

¶ 9    Cavin obtained counsel, and the case was continued several times. On September 7, 2021, Cavin and the prosecution agreed to extend the deferred judgment period for nine months, pursuant to section 18-1.3-102(1)(a), C.R.S. 2025. The prosecution noted that although "th[e] complaint [wa]s about two years old," it was willing to "give her another shot to keep that conviction off of her record." However, the prosecution notified Cavin, "[I]f there are any other violations going forward, we will be seeking to impose that

3

conviction."  The court told Cavin, "Make sure that you check in with Probation, get yourself back on track with them, and get this completed."

¶ 10    In November 2021, Cavin's probation officer filed a second complaint for revocation of the deferred judgment.  The complaint included two counts:

> Count 1:
>
> "The defendant will contact the probation officer at those times and places specified by the probation officer and respond to all reasonable inquiries by the probation officer."
>
> On September 7, 2021, the defendant was ordered by the court to contact probation and failed to do so.  On October 29, 2021, probation called the defendant at the last known phone number and there was no answer.  On November 1, 2021, an appointment letter was mailed to the last known address letting the defendant know she had been scheduled for an in-person office appointment for November 8, 2021, at 1:00 p.m.  On November 8, 2021, the defendant did not appear for her scheduled appointment.  As of November 9, 2021, the defendant has absconded from probation and her whereabouts are unknown.
>
> Count 2:
>
> "The defendant will pay the victim's compensation fund, victims assistance fund, restitution, fees, costs, surcharges, and fines

4

in the amounts and manner ordered by the court.  You will maintain lawful employment with earnings sufficient to pay the amounts ordered by the court, and not terminate that employment without the consent of the probation officer."

On April 1, 2019, the defendant was ordered to pay court costs, restitution, and fines totaling $3,158.50.  As of November 8, 2021, the defendant has not met with the collections investigator to determine a payment plan and is in arrears of $2,598.50.

¶ 11    On November 22, 2021, the court issued a warrant for Cavin's arrest.  More than a year later, in December 2022, Cavin was arrested on the warrant.  She was released on bond again and a hearing was scheduled for January 9, 2023, but she failed to appear on January 9, and another warrant issued for her arrest.  Cavin was arrested on the warrant on March 21, 2023.  On March 22, Cavin acknowledged receipt of the complaint, said she had been living with her grandmother, was working for DoorDash, and asked for reinstatement of her bond.

¶ 12    At a status conference five days later, the trial court reset the case for April 24 to allow Cavin more time to finish her application for a public defender.  The April 24 appearance was then continued to May 15 because Cavin was sick.  Cavin failed to appear on May

5

15 and again on June 28. On August 28, Cavin pleaded not guilty to the revocation complaint and requested a hearing.

¶ 13    The court conducted the revocation hearing on October 19, 2023. Marisa Alexander, Cavin's probation officer, testified that a different probation officer had discussed the terms and conditions of Cavin's probation with her and that Cavin signed the terms of the conditions and initialed provisions nine and ten. Alexander testified that she took over Cavin's case in October of 2021. Since then, Cavin had not contacted probation, so she called Cavin's listed phone number, which was invalid. Additionally, she sent letters to Cavin's last known address notifying her of upcoming probation appointments, and she sent an email to Cavin's reported email address. Cavin missed probation appointments on September 7, November 1, and November 8, 2021.

¶ 14    Cavin testified that when she was placed on probation in 2019, she had recently lost her mother and that she was involved in a Child Protective Services (CPS) case with which she had to comply for three years. She further explained that she could not comply with probation because, in addition to grieving her mother's death, she experienced significant medical issues. When asked if there

was anything else that prevented her from being able to comply with her probation, Cavin responded that she did not have transportation because she lost her car and was unable to sign up for IntelliRide, a transportation service provided by Medicaid. The following colloquy then occurred:

> [DEFENSE COUNSEL]: Did that have anything to do with the fact that you do not have a lot of money?
>
> CAVIN: During that time, yes.
>
> [DEFENSE COUNSEL]: Okay. I'll just ask you directly: Were you unable to get transportation because of the fact that you were indigent and did not have money?
>
> CAVIN: Yes.
>
> [DEFENSE COUNSEL]: Okay. Is there anything else that you want the Court to know about why you couldn't comply with probation?
>
> CAVIN: Just — that — that's pretty much it.

¶ 15    Cavin testified that she understood the terms and conditions of her probation. She testified that she was "pretty sure she didn't make [her April 22, 2019, appointment]" and claimed that probation had an incorrect email address for her. She admitted arriving seventy-five minutes late for a June 19, 2019, probation

7

meeting and thought her caseworker in the CPS case was going to email probation excusing her from that appointment. Her probation officer conducted a home visit on June 27, 2019, and informed Cavin that she was transferring offices and that Cavin was being assigned a new probation officer. Thereafter, Cavin never contacted the new probation officer or appeared for any probation appointments.[1]

¶ 16    Defense counsel argued:

> Your Honor, I actually don't think the Prosecution has proved that Ms. Cavin violated probation as alleged in the complaint. The complaint alleges two counts. The second, I think, is easy, which is the no payment count. Number 1, I think that the Prosecution has failed to prove that Ms. Cavin had the ability to pay and chose not to, but I just don't even think there was any testimony that Ms. Cavin didn't pay. So I don't think that count's been sustained.
>
> . . . .
>
> I don't think it's really in dispute that Ms. Cavin didn't appear when the probation officer wanted her to in 2021. Those — but I think the bigger question is whether Ms. Cavin even

---

[1] The prosecution presented no evidence to support count two (failure to pay) of the revocation complaint and relied on and argued only count one. Therefore, we do not consider the alleged failure to pay count.

knew that she was supposed to. I don't think the Prosecution has proven that she had knowledge of those meetings and the ability to comply with them.

¶ 17    The trial court found:

The Court does find that the People have met their burden in regard to preponderance of the evidence. I think, in particular, looking at Count 1 on the complaint that was filed on November 19, 2021, indicating that there were efforts made by sending a letter to the last known address, that she did not appear, also indicating — there was some testimony regarding the September appointment as well, that there was a September 7th appointment that was missed. The Court will note that that was actually an order from the Court to appear to Probation, and Probation testified that she did not report to Probation as ordered by the Court. That then additional letters were sent out to their last known address for the Defendant and that the Defendant had failed to appear for any of those appointments as well.

Certainly understanding that a term and condition of her probation is to keep Probation apprised of her location and her address and their inability then to contact falls somewhat squarely on the Defendant's shoulders in terms of needing to provide that information, which I assume would have been provided had she made the appointment on September 7th of 2021 when the Court had extended her deferred judgment and specifically ordered her on the record to contact Probation on that date. And she failed to do so.

> The Court at this time does find that Ms. Cavin has failed to comply with the terms and conditions of her probation. The Court at this time is going to revoke the deferred judgment and sentence. Felony conviction will enter on her record.

¶ 18 The trial court revoked Cavin's deferred judgment and entered a judgment of conviction. When Cavin asked for the court to give her another chance at probation, the trial court responded,

> [Y]ou have done nothing on probation. Most of the time I can't get you to come to court. So it doesn't shock me that you haven't shown up for any of your office appointments in probation for four years. This case should have been done a long time ago, no felony conviction, and here we are four years later still dealing with this because you won't come to court, you don't come to probation. Clearly, you don't think this is important. But it is.

¶ 19 The trial court gave Cavin the option of a one-year sentence to community corrections or one year in the custody of the Department of Corrections. Cavin chose a year in community corrections. Cavin was subsequently rejected from community corrections, and her sentence was then converted to one year in the custody of Department of Corrections.

10

## II. Revocation of Deferred Judgment and Sentence

¶ 20    Cavin contends that the trial court erroneously revoked her deferred judgment and sentence without making the required indigency findings under *Sharrow v. People*, 2019 CO 25. We disagree.

### A. Applicable Law and Standard of Review

¶ 21    "Probation is a privilege, not a right," and may be revoked if a probationer violates any condition of probation. *People v. Howell*, 64 P.3d 894, 896 (Colo. App. 2002).

¶ 22    The prosecution bears the burden of proving a violation of a deferred judgment and sentence by a preponderance of the evidence, and whether it has done so is a factual determination for the trial court. *People v. Rivera-Bottzeck*, 119 P.3d 546, 548 (Colo. App. 2004). The preponderance of the evidence standard directs a court to decide whether the existence of a contested fact is more probable than its nonexistence. *People v. Marx*, 2019 COA 138, ¶ 49. If the court finds a violation, it must revoke the deferred judgment, enter the conviction, and sentence the defendant. *People v. Wilder*, 687 P.2d 451, 453 (Colo. 1984); *Rivera-Bottzeck*, 119 P.3d at 548. We do not disturb the court's factual findings "if they are

supported by competent evidence in the record." *Sharrow*, ¶ 28 (citation omitted).

¶ 23 Additionally, when a defendant argues that a violation of a nonpayment condition is based on a lack of financial means, the trial court cannot revoke the deferred judgment and sentence without first determining whether the defendant failed to comply with the condition willfully or failed to make sufficient bona fide efforts to acquire resources to comply with the condition. *Id.* at ¶¶ 6, 42. "[I]t is incumbent on the defendant to assert that [her] lack of financial means prevented [her] from complying with a nonpayment condition of probation." *Id.* at ¶ 44.

¶ 24 The parties dispute preservation. Cavin asserts that she preserved this issue through her responses to counsel's examination, indicating that she had difficulties with transportation and that those difficulties stemmed from her indigence. The People argue that Cavin never argued indigence as the reason for losing contact with the probation department and that Cavin instead claimed she lacked knowledge of her appointment dates. We agree with the People that Cavin did not make the same argument to the trial court that she makes on appeal and, thus, that the issue is

unpreserved.  *See People v. Ujaama*, 2012 COA 36, ¶ 37.  We review

unpreserved errors for plain error.  *People v. Lientz*, 2012 COA 118,

¶ 10.  To warrant reversal under this standard, the error must be

obvious, prejudice a substantial right, and cast serious doubt on

the reliability of the judgment.  *People v. Roletto*, 2015 COA 41,

¶ 29.

## B.    Analysis

¶ 25    We discern no error in the trial court's ruling revoking Cavin's

deferred judgment and sentence, for three reasons.  First, the

record shows, and defense counsel below conceded, that Cavin

"didn't appear when the probation officer wanted her to in 2021."

¶ 26    Second, Cavin testified that she understood the terms and

conditions of her probation.  She admitted to missing appointments

and attributed this primarily to medical issues and grieving.  And

while she faulted the probation department for having an incorrect

email address, it was her responsibility to provide accurate contact

information to probation.  Additionally, she admitted that she had

appeared for one appointment, albeit late, and that probation had

conducted a home visit with her.  Nevertheless, she never informed

probation of any financial difficulties related to attending her appointments.

¶ 27     Third, while Cavin responded, "Yes," when asked whether her transportation difficulties were due to indigence, she never explained why, beyond her medical issues, she was unable to make appointments before selling her mother's car. Moreover, she never claimed that finance-related problems prevented her from signing up for IntelliRide. Accordingly, we conclude that ample record evidence supports the court's finding that Cavin failed to contact her probation officer at the times and places specified by her probation officer and failed to respond to all reasonable inquiries by the probation officer, thereby violating the terms and conditions of her deferred judgment and sentence.

¶ 28     We are not persuaded otherwise by Cavin's reliance on *Sharrow*. In *Sharrow*, ¶¶ 10-16, the defendant's probation was revoked twice and reinstated. The third revocation complaint alleged that the defendant moved from his established residence without permission and was terminated from treatment. *Id.* During the hearing, both the defendant and the probation officer described the defendant's financial difficulties in securing and maintaining

14

housing and in finding employment. *Id.* at ¶ 19. The probation officer testified that the defendant had not applied for employment every day and had shown little effort, given his dire straits. *Id.* The defendant argued that his noncompliance with probation was due to his "inability to pay." *Id.* at ¶ 20. The trial court disagreed and found that he did not appear to be making his best efforts. *Id.* On appeal, the defendant argued that due process required a finding that the violation was willful or that he acted unreasonably. *Id.* at ¶ 21. A division of this court disagreed. *Id.* at ¶ 22. The supreme court affirmed but on different grounds. It held that

> when a probationer defends against an alleged violation of a nonpayment condition of probation based on his lack of financial means, the trial court cannot revoke probation and impose imprisonment without first determining whether he failed to comply with probation willfully or failed to make sufficient bona fide efforts to acquire resources to comply with probation.

*Id.* at ¶ 6.

¶ 29 Unlike *Sharrow*, Cavin did not argue that her indigence prevented her from attending appointments or maintaining contact with her probation officer. That argument is made for the first time on appeal. Instead, she asserted that she did not know when many

15

of her appointments were scheduled and that her grieving and medical issues caused her noncompliance. Moreover, we cannot fault the trial court for failing to make the *Sharrow* findings when the issue of indigency was never brought to its attention. *See id.* at ¶ 44 ("[I]t is incumbent on the defendant to assert that his lack of financial means prevented him from complying with a nonpayment condition of probation."). And nothing in the record or in the *Sharrow* decision makes it "obvious" that the court should have made such findings sua sponte.[2]

¶ 30    Accordingly, we discern no error in the court's revocation of Cavin's deferred judgment and sentence and affirm the judgment.

### III.    Disposition

¶ 31    The judgment is affirmed.

JUDGE BROWN and JUDGE SCHUTZ concur.

---

[2] Cavin's reliance on *Williams v. People*, 2019 CO 101, is misplaced. In *Williams*, the supreme court found that when a defendant introduces some evidence of her inability to pay restitution, a *payment term*, the district court must make the ability-to-pay findings under section 18-1.3-702(3)(c), C.R.S. 2025. Because this case deals with a *nonpayment term*, *Williams* is distinguishable.

16